UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ROBERT LALLY,

    Plaintiff,

v.

GOVERNOR GRETCHEN E. WHITMER, JOSEPH GASPER, and HEIDI E. WASHINGTON,

    Defendants.

_____ /

Case No. 23-10044

F. Kay Behm
United States District Judge

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF No. 14)

This case is before the court on Defendants Governor Gretchen Whitmer, Joseph Gasper, and Heidi Washington's ("Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 14). Plaintiff Michael Lally filed his initial complaint on January 6, 2023, alleging violations of his rights under the Ex Post Facto Provisions of the Constitution of the United States and the Michigan Constitution. (ECF No. 1). Plaintiff alleges, in part, that Defendants violated his constitutional rights by continuing to require him to register under Michigan's Sex Offenders Registration Act (SORA) even after it had been declared unconstitutional and by failing to correct the public record.

1

(ECF No. 11, PageID.114).  This case was initially before District Judge Laurie J. Michelson, but was reassigned to the undersigned on February 6, 2023.

On April 5, 2023, Defendants filed a motion to dismiss Plaintiff's complaint. (ECF No. 6).  On April 26, 2023, Plaintiff filed a first amended complaint (FAC) and, as a result, the court terminated Defendants' motion as moot.  (ECF Nos. 8, 9). On May 20, 2023, Plaintiff filed his second amended complaint (SAC) pursuant to a stipulated order entered on May 8, 2023.  (*See* ECF No. 10, 11).  Defendants then filed the present motion to dismiss Plaintiff's SAC on June 20, 2023.  (ECF No. 14).  The court held a hearing on November 15, 2023, and both parties participated in oral argument.  For the reasons stated below, the court **GRANTS** Defendants' motion.

**I.     BACKGROUND**

　　A.     Michigan's Sex Offenders Registration Act (SORA)

The first version of Michigan's SORA, Mich. Comp. Laws § 28.723 *et seq.*, as enacted in 1994, created a confidential database of individuals convicted of certain sex offenses that could only be accessed by law enforcement.  *People v. Betts*, 507 Mich. 527, 533 (2021).  In 1997, the registry was made available for in-person public inspection during business hours and, in 1999, the database was computerized and published online for public access.  *Id.* at 534.  The amount and

type of information registrants were required to provide to law enforcement changed significantly as part of two key amendments in 2006 and 2011. *Id.* In 2006, SORA was amended to prohibit registrants from living, working, or loitering within 1,000 feet of a school. *Does # 1-5 v. Snyder*, 834 F.3d 696, 698 (6th Cir. 2016) ("*Does I on appeal*") (citing Mich. Pub. Acts 121, 127 (2005)). In 2011, SORA was further amended to categorize registrants into one of three tiers based on their crime of conviction and require registrants to "appear in person 'immediately' to update information such as new vehicles or 'internet identifiers.'" *Id.* Both the 2006 and 2011 amendments applied retroactively to all individuals who were required to register under the Act, and violations carried heavy penalties. *Id.* (citing Mich. Pub. Act. 46; Mich. Pub. Acts 17, 18 (2011)).

In 2016, a group of registered individuals brought a lawsuit challenging SORA's constitutional validity on a number of grounds, including that its retroactive application amounted to an unconstitutional Ex Post Facto punishment. *Id*. The district court held, in part, that the retroactive application of SORA did not violate the Ex Post Facto clause. *John Does 1-4 v. Snyder*, 932 F. Supp. 2d 803, 807 (E.D. Mich. 2013) ("*Does I*"). The Sixth Circuit reversed this decision in part in *Does I on appeal*, holding "[t]he retroactive application of SORA's 2006 and 2011 amendments to Plaintiffs is unconstitutional and it must

3

therefore cease." *Does I on appeal*, 834 F.3d at 706. However, the Sixth Circuit did not address any of the other constitutional issues raised by the plaintiffs in *Does I* and, shortly after the Sixth Circuit's decision in *Does I on appeal*, a second set of plaintiffs filed a lawsuit challenging SORA on those same constitutional grounds. *Doe v. Snyder*, 449 F. Supp. 3d 719 (E.D. Mich. 2020) ("*Does II*"). *Does II* held that (1) retroactive application of any SORA provision violated the Ex Post Facto Clause; (2) the school-zone provisions and some reporting requirements were unconstitutionally vague; and (3) some of the reporting requirements violated the First Amendment. *Id.* In 2021, the Michigan Supreme Court similarly held that "the 2011 SORA, when applied to registrants whose criminal acts predated the enactment of the 2011 SORA amendments, violates the constitutional prohibition on ex post facto laws." *Betts*, 507 Mich. at 574.

Following the decisions in *Does I, Does I on appeal, Does II*, and *Betts*, yet another group of Michigan sex offenders filed a class-action lawsuit challenging additional aspects of SORA. *Does v. Whitmer*, 69 F.4th at 304 ("*Does 2.5*"). The plaintiffs sued each of the defendants in their individual capacities, arguing that they "knew that the invalidated provisions were unconstitutional, but failed to stop their subordinates from enforcing them against the plaintiffs." *Id.* The Sixth

Circuit, however, held that the plaintiffs had failed to state a claim of supervisory liability against the defendants. *Id.* at 309.

    B.    <u>Facts of Plaintiff's Case</u>

On October 21, 1992, Plaintiff entered a plea of no contest to one count of Criminal Assault Less than Murder, pursuant to Mich. Comp. Laws § 750.84(1)(a), and one count of Criminal Sexual Conduct 2nd Degree (CSC II), pursuant to Mich. Comp. Laws § 750.520(c)(1)(f). (ECF No. 11, PageID.115). Pursuant to Plaintiff's plea deal, he was sentenced on February 8, 1993 to 60 months on the Criminal Assault Less than Murder conviction and 60 months on the CSC II conviction, to be served concurrently, along with 38 days credit for time served. *Id.*, PageID.116. At the time of Plaintiff's sentencing, SORA was not yet in effect and, therefore, it was not mentioned in Plaintiff's Judgment of Guilt, sentencing documents, or at the sentencing hearing. *Id.* However, on November 22, 1995, Plaintiff alleges he was "verbally compelled to register under SORA as a condition of parole relief," and was told he would be required to continue his registration for 25 years and participate in a class prepared by the MDOC. *Id.*, PageID.117. This 25-year requirement meant that Plaintiff would be required to register with SORA from November 22, 1995 until November 22, 2020. *Id.*, PageID.119.

5

In 2008, Plaintiff moved from Michigan to Princeton, Texas. *Id.*, PageID.118. He "notified the Michigan State Police SORA office of his intention and then immediately registered under the Texas SORA with the local Sheriff's Department in Collins, Texas" upon his arrival. *Id.* In 2021, Plaintiff moved back to Jackson, Michigan and "immediately registered with the Michigan State Police Department on September 20, 2021."[1] *Id.*, PageID.119. He alleges that, at the time of his registration in 2021, he was not notified that the Sixth Circuit and the Michigan Supreme Court had held that SORA was unconstitutional or that he had already completed his 25-year registration requirement. *Id.*

Plaintiff now argues that each of the individual Defendants knew or should have known by 2021 that SORA was unconstitutional and they had the duty to: (a) "remove Plaintiff from the Michigan SORA registry and eliminate every public record of his unlawful registration from every database," (b) "identify other governmental and nongovernmental entities that relied on Michigan's unconstitutional registration of Plaintiff as a basis for listing him on their publicly available websites," (c) "take all reasonable steps, including the filing of litigation,

---

[1] Because this date was after November 22, 2020, Plaintiff was no longer required to register as a sex offender under Michigan's SORA. Plaintiff admitted at oral argument that he was not prompted or compelled by law enforcement to register when he moved back to Michigan, but he mistakenly thought it was still a requirement.

6

to require those entities to eliminate all public access to Plaintiff's Michigan registration," and (d) "timely inform Plaintiff" that each of these duties had been honored.  *Id.*, PageID.122.  Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and attorney fees under 42 U.S.C. § 1983.  *Id.*, PageID.124, 126.

## II.  STANDARD OF REVIEW

A motion brought pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's jurisdiction over the subject matter of the suit.  Fed. R. Civ. P. 12(b)(1).  Allegations that a defendant is entitled to Eleventh Amendment immunity can be brought under this section as a motion to dismiss for lack of subject matter jurisdiction.  *See Skidmore v. Access Grp., Inc.*, 149 F. Supp. 3d 807, 809 (E.D. Mich. 2015) (citing *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009)) ("A claim of sovereign immunity challenges the court's subject matter jurisdiction and, as such, is properly raised under Federal Rule of Civil Procedure 12(b)(1)).  Allegations that a plaintiff lacks standing may also be brought as a motion to dismiss under this section.  *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008) ("We review de novo a district court's dismissal of a case for lack of standing – lack of subject matter jurisdiction – under Fed. R. Civ. P. 12(b)(1).").

Rule 12(b)(1) motions fall into two categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack is a "challenge to the sufficiency of the pleading itself" whereas a factual attack "is a challenge to the factual existence of subject matter jurisdiction." *Id.* In this case, Defendants bring a facial attack and, therefore, the court must "accept[] the material allegations in the complaint as true and construe[] them in the light most favorable to the nonmoving party." *Id.*

### III.    ANALYSIS

Defendants argue Plaintiff's case must be dismissed for a number of reasons, including that: (1) Plaintiff lacks standing, (2) Defendants are entitled to Eleventh Amendment sovereign immunity, (3) Plaintiff's claims are barred by the applicable statute of limitations, (4) Plaintiff cannot bring a claim for supervisory liability under § 1983, and (5) Plaintiff fails to allege facts showing he is entitled to declaratory relief. (ECF No. 14). Defendants raise these concerns under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). *Id.* However, the court must first determine whether it has subject matter jurisdiction under Rule 12(b)(1), since a lack of subject matter jurisdiction will mandate dismissal of the case and render Defendants' Rule 12(b)(6) motion moot. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*,

327 U.S. 678, 682 (1946)) (motion to dismiss for failure to state a cause of action may be decided only after establishing subject matter jurisdiction, since determination of the validity of the claim is, in itself, an exercise of jurisdiction). The court agrees that it lacks subject matter jurisdiction over this case because several of Plaintiff's claims are moot and Plaintiff lacks standing to bring his remaining claims.

A.  Mootness

As part of the Article III standing analysis, the court may first determine whether any of Plaintiff's claims are constitutionally moot. Article III of the Constitution limits the jurisdiction of federal courts to hear actual "cases" and "controversies." U.S. Const. Art. III § 2 cl. 1. A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *In re Kramer*, 71 F.4th 428, 438 (6th Cir. 2023) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). The court generally "has a continuing obligation to enquire whether there is a present controversy as to which effective relief can be granted…[a]nd when an issue is constitutionally moot, we don't have jurisdiction to consider it." *Id.* (citing *Coal for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004)). The key question in determining whether an issue is moot is "whether it would 'make a difference to the legal

9

interests of the parties' if we granted the relief sought." *Id.* (citing *Hanrahan*, 905 F.3d 947, 960 (6th Cir. 2018)).

Looking to Plaintiff's complaint, he alleges several facts relevant to his claimed injuries, including:

> A. At the time this suit was filed defendants knew or should have known that plaintiff was still unconstitutionally registered as a sexual offender by the State of Michigan…
>
> B. Weeks after this action was brought the State of Michigan continued to analyze plaintiff's eligibility for discharge from SORA registry by applying time requirements from a SORA statute that had been declared unconstitutional.
>
> C. Because of Defendants [sic] acts or omissions Plaintiff continues to be listed as a sexual offender on websites and in data bases controlled by the State of Michigan…
>
> D. Plaintiff's unconstitutional registration as a sexual offender in Michigan continues to be posted on multiple websites that are publicly available throughout the world…

(ECF No. 11, PageID.122-23).

Plaintiff is not currently listed on Michigan's online sex offender registry[2] and does not allege that he has received any punishment for failure to register.

---

[2] The court may take judicial notice of any public or government documents where their sources "cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Colvin v. Veterans Admin. Med. Ctr.*, 390 F. Appx. 454, 456 (6th Cir. 2010). Other courts have taken judicial notice of information listed on a publicly available state sex offender registry website. *See Wallace v. New York*, 40 F. Supp. 3d 278, 286 (E.D.N.Y. 2014). In this case, the court will take judicial

Plaintiff agrees that he was required to register with SORA for a 25-year period from November 22, 1995 to November 22, 2020, but this period has long passed. *Id.*, PageID.121. Additionally, pursuant to the relevant caselaw, the 2006 and 2011 SORA Amendments have been unenforceable against Plaintiff since at least 2020. *See Does 2.5*, 69 F.4th at 706 (citing *Does I on appeal*, 834 F.3d at 706) ("we reversed, holding that retroactive application of SORA did violate the Ex Post Facto Clause."); *Doe v. Whitmer*, No. 21-11903, 2022 WL 4110150, at *4 (E.D. Mich. Sept. 8, 2022) ("since *Does II*, none of SORA's 2006 and 2011 amendments can be enforced against any registrants; and no pre-2021 SORA provision can be enforced against members of the *ex post facto* subclass."). Likewise, any of Plaintiff's claims based on allegations that he is "still unconstitutionally registered as a sexual offender" or "the State of Michigan continue[s] to analyze plaintiff's eligibility for discharge from SORA registry," are now moot.

B. <u>Standing</u>

For the remainder of Plaintiff's injuries, it must be determined whether he has sufficiently alleged Article III standing. Article III of the Constitution requires a

---

notice of the fact that Plaintiff is not currently listed on Michigan's online sex offender registry. *See Michigan Sex Offender Registry*, https://mspsor.com/Home/Search (last visited November 19, 2023).

plaintiff to have a "personal stake" in their case, otherwise known as standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). To establish standing, the plaintiff bears the burden of showing: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). These elements are not "mere pleading requirements but rather an indispensable part of the plaintiff's case" and, likewise, they "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* However, Defendants argue that Plaintiff has failed to allege facts that would meet any of the three relevant standing requirements. (ECF No. 14, PageID.153) The court agrees.

     i.    *Injury in Fact*

Defendants first argue that Plaintiff has not suffered a sufficient injury in fact. *Id*. Injury in fact is "the '[f]irst and foremost' of standing's three elements." *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) (citing

12

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998))). To establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (citing *Lujan*, 504 U.S. at 560). An injury is "concrete and particularized" when it affects the plaintiff in a personal or individual way and is "*de facto*," meaning that it actually exists. *Id.*

Plaintiff's SAC argues that "Defendants['] breach of duties…and their continuing constitutional violations of settled law are causing him irreparable and immediate injury, loss or damage" including the following:

> A. Restricting Plaintiff's right to be free from unlawful punishment that impairs his fundamental right to travel;
>
> B. Restricting Plaintiff's right to be free from unlawful punishment that impairs his fundamental right to work;
>
> C. Restricting Plaintiff's right to be free from unlawful punishment that impairs his fundamental right to have housing where he chooses;
>
> D. Restricting Plaintiff's right to be free from unlawful punishment that impairs his fundamental right to engage in free speech activities (including the use of the internet); and
>
> E. Restricting Plaintiff's right to be free from unlawful punishment that is resulting in harassment, embarrassment, stigma and public obloquy.

(ECF No. 11, PageID.123-24).  However, Plaintiff's complaint includes no facts suggesting that his right to travel, right to work, right to have housing where he chooses, or right to engage in free speech activities have ever been infringed or that he has suffered harassment, embarrassment, or stigma as a result of his prior registration.[3]

Plaintiff also appears to allege that he has suffered injuries based on the continuing inclusion of his sex offender status on a number of "websites and data bases controlled by the State of Michigan" and other "websites that are publicly available throughout the world." *Id.*, PageID.123.  However, Plaintiff has failed to provide any information about the nature of these websites, the ownership of the non-government websites, or what personal information is included.  Plaintiff has

---

[3] Plaintiff's SAC does allege that he was subjected to "oppressive" requirements under the Texas SORA while he was living there, including "once a month personal visits, not allowing purchase of a home with his wife within 1,000 feet of certain types of schools, and traveling for his hauling business near childrens' [sic] playgrounds without specific authorization became increasingly difficult and challenging."  (ECF No. 11, PageID.119).  While these restrictions may align more closely with Plaintiff's alleged constitutional violations, he has alleged no connection between these injuries and the Defendants or his Michigan SORA registration and, likewise, they do not independently satisfy the injury in fact or traceability requirements.

Additionally, Plaintiff argues that "he is still registered by the State of Texas as a sexual offender on the basis of his unconstitutional Michigan SORA registration. *Id*.  However, Plaintiff admits that he was classified as a Tier III SORA registrant in Texas "based upon their interpretation of the underlying offense obtained from the Michigan State Police." *Id.*  This allegation suggests that Plaintiff's registration and relevant restrictions were based on the nature of his valid criminal conviction, not the mere fact that he was included on Michigan's sex offender registry.

also failed to allege that these websites or databases include information obtained directly from Plaintiff's Michigan SORA registration, as opposed to general information about Plaintiff's valid criminal convictions from other Michigan websites or information gathered from the Texas sex offender registry.

Plaintiff's response argues that he has sufficiently pled "*a continuing violation of settled constitutional law* based upon the authority of *Ex Parte Young*, 209 U.S. 123 (1908) and *Green v. Mansour*, 474 U.S. 64, 68 (1985)." (ECF No. 15-1, PageID.212-13) (emphasis in original). While the court agrees that *Ex Parte Young* and *Green v. Mansour* present an exception to Eleventh Amendment immunity that allows a plaintiff to seek "prospective injunctive relief to prevent a continuing violation of federal law," Plaintiff has not specified what "settled constitutional law" is being violated or how the Defendants are continually violating it. *See Martinko v. Whitmer*, 465 F. Supp. 3d 774, 777 (E D. Mich. 2020) (citing *Ex parte Young*, 209 U.S. 123 (1908); *Green v. Mansour*, 474 U.S. 64 (1985)). While the court must accept each of the facts alleged in the SAC as true and construe them in the light most favorable to Plaintiff, the court is not required to independently determine which of Plaintiff's alleged facts comprise a "continuing violation of settled constitutional law" that would rise to the level of an injury in fact. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)

("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to…put flesh on its bones) (citing *Citizens Awareness Network, Inc. v. United States Nuclear Regulation Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)); *see also Emerson v. Novartis Pharm Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (quoting *United States v. Dunkel*, 927 F.2d 955, 956) (7th Cir. 1991) ("'Judges are not like pigs, hunting for truffles' that might be buried in the record.")). Plaintiff's alleged injuries do not rise above the threshold of "hypothetical" and "conjectural" and, as such, he has not pled enough to satisfy the injury in fact element of standing.

    ii.    Traceability

Defendant next argues that Plaintiff's "alleged injuries are not fairly traceable to [the] conduct of Governor Gretchen Whitmer, MSP Colonel Gasper, and/or MDOC Director Washington." (ECF No. 14, PageID.154). Traceability "looks to whether a defendant's actions have a causal connection to a plaintiff's injuries." *Changizi v. Dep't of Health & Hum. Servs.*, 82 F.4th 497 (6th Cir. 2023) (citing *Lujan*, 504 U.S. at 560). While a plaintiff does not need to allege strict "but for" causation, an injury "cannot have been 'th[e] result [of] the independent action of some third party not before the court.'" *Moore v. Auto Club Servs.*, 615

16

F. Supp. 3d 670, 680 (E.D. Mich. 2022) (citing *Doe v. DeWine*, 910 F.3d 842, 849-50 (6th Cir. 2018) (citing *Lujan*, 504 U.S. at 560)).

Not only does Plaintiff fail to allege facts suggesting that his right to travel, right to work, right to have housing where he chooses, or right to engage in free speech activities have been infringed upon, he also fails to allege how any of the Defendants' actions could have caused these injuries. Additionally, while Plaintiff argues that information about his prior registry is posted on "other websites that are publicly available throughout the world," he has not alleged that the inclusion of this information can be attributed to the Defendants, rather than the independent action of unnamed third parties. Likewise, Plaintiff has also not alleged sufficient facts to meet the traceability requirement.

### iii. Redressability

Finally, Defendants argue that Plaintiff's "requested remedy is not likely to redress his alleged past injury." (ECF No. 14, PageID.155). An injury is redressable "if a judicial decree can provide 'prospective relief' that will 'remove the harm.'" *DeWine*, 910 F.3d at 850 (citing *Warth v. Saldin*, 422 U.S. 490, 505 (1975)). To satisfy the redressability element of standing, a plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *R.K. by & through J.K. v. Lee*, 53 F.4th 995, 1001 (6th Cir.

2022) (citing *Lujan*, 504 U.S. at 561). Because "[r]edress is sought *through* the court, but *from* the defendant…[t]he real value of the judicial pronouncement – what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion – is the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*" *DeWine*, 910 F.3d at 850 (citing *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)) (emphasis in original).

> Plaintiff requests the following declaratory and injunctive relief in his SAC:
>
> A declaration that "any directive by Defendants requiring Plaintiff to register as a sex offender, based upon conduct which occurred on October 15, 1992, or pursuant to the State Court's (Antrim County's Circuit Court) Judgment of Sentence entered on February 8, 1993, the Michigan Sex Offender Registration Act, SORA, and any other related registration, are null, void and of no legal effect;"
>
> An order requiring that "any reference to SORA registration of plaintiff be removed from the State of Michigan computerized law enforcement database, public internet websites and all other publicly accessible records;"
>
> An order requiring that "any non-public Michigan record of plaintiff's SORA registration include a true copy of a judgment or order entered granting him relief and declaring that any directive to register or any registration of Plaintiff on SORA is null, void, and of no legal effect;" and
>
> An order requiring "Defendants to timely take all reasonable steps necessary, including filing of litigation, to have public records of Plaintiff's Michigan registration maintained by other governmental and nongovernmental entities removed from public access."

18

(ECF No. 11, PageID.124-25). Additionally, Plaintiff asks the court to set appropriate deadlines for Defendants to comply with the requested relief, require Defendants to keep the court and Plaintiff informed of their efforts, and an award of reasonable attorney's fees and costs. *Id.*

Because Plaintiff's injuries are not fairly traceable to any of the Defendants, there is no relief, whether injunctive or declaratory, applicable to those Defendants that would redress Plaintiff's alleged injuries. *R.K. by & through J.K*, 53 F.4th at 1001 (citations omitted). Plaintiff is no longer listed on the Michigan SORA registry and, therefore, a declaration that "any directive by Defendants requiring Plaintiff to register as a sex offender… [is] null void and of no legal effect" would be duplicative of relief already granted by courts in a number of cases (*Does I, Does I on appeal, Does II, and Does 2.5*) and would be an advisory opinion. Further, Plaintiff has provided no authority showing that state government officials have a duty to "take all reasonable steps necessary, including filing of litigation" to impact the information listed on nongovernmental websites. Defendant argues that "[t]he *Young* doctrine authorizes federal courts to enjoin state officials to conform their conduct to the requirements of federal law and grant declaratory relief." (ECF No. 15-1, PageID.217). However, this requested relief must still redress the Plaintiff's alleged injuries in a way that is sufficient to

confer Article III standing. Plaintiff has failed to show how any of his alleged injuries would be redressed by the relief sought.

## IV. CONCLUSION

Because Plaintiff has failed to meet all of the three elements of Article III standing to bring his active claims – injury in fact, causation, and redressability – this court lacks subject matter jurisdiction over his case, and it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016) (citing *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015) ("If a party does not have standing to bring an action, then the court has no authority to hear the matter and must dismiss the case.")). Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is **GRANTED**. The court need not address Defendants' arguments for dismissal under Rule 12(b)(6). *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (The court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction."). This is a final order and closes this case.

**SO ORDERED**.

Date: November 22, 2023              s/F. Kay Behm
                                     F. Kay Behm
                                     United States District Judge